UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

MELODY A. HALL,                    )
                                   )
            Plaintiff,             )
                                   )
                v.                 )          Case No. 3:19-cv-354-PPS
                                   )
ANDREW M. SAUL,                    )
Acting Commissioner of             )
Social Security,                   )
                                   )
            Defendant.             )

## OPINION AND ORDER

Melody Hall sought Supplemental Security Income (SSI) benefits on account of

her alleged disability. Her application was denied at all stages of the administrative

review process, including after a hearing before on ALJ who issued a written decision

outlining the basis for his determination that Hall was not legally disabled and that she

was capable of performing her past work as an accountant. Hall has now appealed that

decision to me, and she argues that the ALJ made two errors in assessing her

application. First, she says he did not adequately account for her mental limitations,

which resulted in an overly broad and inclusive finding as to her capacity to work.

Second, she says the ALJ failed to properly include her need for an assistive device,

specifically a walker as opposed to a cane, in his findings. A review of the ALJ's

decision leads me to agree with Hall that the ALJ failed to adequately address the

mental limitations he previously recognized for Hall before he concluded that she could

return to work as an accountant. As such, I will reverse the ALJ's written decision and

remand this case for further proceedings.

## Background

Melody Hall filed an application for SSI that alleged a disability onset date of February 8, 2016. [A.R.[1]  21.] At step one, the ALJ stated Hall had not worked since her alleged onset date. [A.R. 23.] At step two, the ALJ reviewed whether Hall had severe impairments. He determined she had three: ankylosing spondylitis, fibromyalgia, and obesity. [*Id.*] He further acknowledged she had been diagnosed with depression but found it to be non-severe. [*Id.*] There is not extensive record evidence relating to Hall's mental health, but it seems Hall's mental conditions reached its nadir when in March 2016, she was placed under emergency detention due to suicidal ideation, brought on by her worsening condition, the possibility of losing her home and a prior denial of disability. [A.R. 379-80, 685.] The records from that hospitalization show she had difficulty with prior antidepressants, and she received a diagnosis of "[r]ecurrent major depression, severe, without psychosis." [A.R. 402.] She received in-home therapy for some time thereafter to treat her depression.

Concerning Hall's mental health condition and its associated limitations, the ALJ determined she had "mild limitation in understanding, remembering, or applying information; no limitation in interacting with others; mild limitation in concentrating, persisting, or maintaining pace; and no limitation in adapting or managing oneself."

---

[1]  The Administrative Record (cited as "A.R." throughout the opinion) may be found at Docket Number 8. All page citations are to the pagination in the lower right-hand corner of the A.R.

[A.R. 23.] This finding diverted from the state agency psychological consultants, who both found Hall to have moderate limitations in concentration, persistence, and pace ("CPP"), as opposed to only mild, as a result of her depression. [A.R. 80, 94.] The ALJ stated he gave "little weight" to their opinions because the consultants "did not have the benefit of reviewing the entire record, as evidence was submitted after their opinions were given." [A.R. 24 at n.1.] But the ALJ does not say what the evidence was that caused him to reduce Hall's CPP limitation from moderate to mild and discount psychological consultant's conclusions. [*Id.*]

At step three, the ALJ determined that Hall did not have any impairment or combination of impairments that met or medically equaled any applicable Social Security listings. [A.R. 24.] In doing so, the ALJ recognized Hall's BMI was 54 at the time of her application (putting her well above the threshold of 40 for morbid or extreme obesity). [AR. 24-25.] But there was insufficient effect from that obesity on her physical impairments to medically equal a listing. [*Id.*]

Next the ALJ determined Hall's residual functional capacity ("RFC"). Based on his review of the evidence, the ALJ determined that Hall had the ability to perform "sedentary work." Federal regulations define that as work "involving lifting no more than 10 pounds at a time and occasionally lifting and carrying articles like, docket files, ledgers, and small tools." 20 C.F.R. § 404.1567(a). A sedentary job requires only occasional walking or standing but primarily involves sitting. *Id.* The ALJ then found Hall had the following additional limitations: "she can occasionally climb ramps and

stairs, as well as occasionally balance, stoop, kneel and crouch. She can never climb

ladders, ropes, or scaffolds; never crawl; never work at unprotected heights; and never

work on slippery surfaces, or dangerous or uneven terrain." None of those additional

limitations are that surprising, given Hall's morbid obesity. Finally, the ALJ added that

"[s]he must use a medically necessary cane at all times while standing or walking."

[A.R. 25.]

In arriving at the RFC, the ALJ reviewed and discussed portions of Hall's

medical records, including objective medical evidence and opinion testimony submitted

as part of her application. At this stage of the proceedings, the ALJ gave the state

medical consultants "some weight" as opposed to the little weight he had given the

psychological consultants earlier in the written opinion. [A.R. 26.] With regard to the

medical consultants, the ALJ found that Hall was "slightly more limited than opined by

these consultants" as a result of evidence submitted after their opinions were given and

their inability to examine Hall or hear her subjective complaints, as the ALJ did through

her testimony. [A.R. 26.] Again, that specific evidence was not really elaborated upon.

The ALJ referenced one of Hall's treating physicians but stated that his conclusions

were at odds with the objective medical evidence, specifically what the ALJ saw as

Hall's lack of musculoskeletal problems. [A.R. 26.]

The determination of Hall's RFC does not mention any of her mental

impairments or contain a discussion of any limitations as a result of her mental

impairments. At most it references the opinion of Gloria Barthel, a Licensed Clinical

Social Worker (LCSW), who was not an "acceptable medical source." [A.R. 26.] Barthel worked at the Swanson Center where Hall sought treatment and submitted a narrative letter on Hall's behalf. The letter notes that Hall was hospitalized for suicidal ideation and suffers from major depressive disorder, which was being treated with in-home therapy. [A.R. 689.] The ALJ noted that any physical medical opinions offered by Barthel were outside her expertise and excluded them. The ALJ then rejected Barthel's remaining assessment in total by stating that "her findings are likewise not supported by the objective findings in the record" but the written opinion does not mention any specifics. [A.R. 26.]

With that RFC determined, the ALJ proceeded to the next step of the evaluation and found that Hall could return to work in her past job as an accountant, which is a sedentary position. This conclusion was based in part on the testimony of a Vocational Expert ("VE") who testified that someone with Hall's RFC could return to work as an accountant. [A.R 27.] The same VE testified that Hall would *not* be able to perform this job if she required the use of a walker to stand and walk. But as noted in the RFC, the ALJ found Hall only needed a cane—not a walker—to ambulate. [A.R. 66-67.] Because the ALJ determined Hall could return to her former job, the ALJ did not consider any other alternative employment. Accordingly, the ALJ found that Hall was not disabled and denied her claim for benefits.

## Discussion

In a Social Security appeal, my role as district court judge is limited. I don't start

from scratch and determine whether a claimant is disabled and entitled to benefits.

Instead, my job is to review the ALJ's findings to see if they are supported by

substantial evidence, and that review is deferential. If substantial evidence supports the

ALJ's factual findings, they are conclusive and will not be disturbed. *Shideler v. Astrue*,

688 F.3d 306, 310 (7th Cir. 2012).; 42 U.S.C. §405(g). The bar for what amounts to

"substantial evidence" under the Social Security Act has been set fairly low by the

Supreme Court. It is less than a preponderance of the evidence but more than a scintilla.

*Richardson v. Perales*, 402 U.S. 389, 401 (1971). Given this modest standard, the review is

a light one, but of course this does not mean that I can "simply rubber-stamp the

Commissioner's decision without a critical review of the evidence." *Clifford v. Apfel*, 227

F.3d 863, 869 (7th Cir. 2000). "Evidence is substantial if a reasonable person would

accept it as adequate to support the conclusion." *Young v. Barnhart*, 362 F.3d 995, 1001

(7th Cir. 2004). My review is guided by the principle that while "[t]he ALJ is not

required to address every piece of evidence or testimony presented, but must provide a

'logical bridge' between the evidence and the conclusions so that we can assess the

validity of the agency's ultimate findings and afford the claimant meaningful judicial

review." *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010). Stated differently, I don't

simply review the ALJ's conclusions to see if I agree, I must also ensure that the ALJ

"showed their work" as they worked through the claimant's application.

Hall raises two main arguments in her appeal and both of them concern the

ALJ's RFC determination. Hall says that the ALJ failed to adequately assess both her

mental health limitations and physical limitations. On the mental health front, Hall says that the RFC determination was missing a reference to or a limitation incorporating her mild limitation in CPP. [DE 13 at 10.] Regarding Hall's physical limitations, she says that she has had to use a walker to stand or walk since 2016, but the RFC makes no mention or accounting of that and is thus deficient. Because the ALJ's failed to address Hall's mental limitations whatsoever in making the RFC determination, there is an adequate basis to remand on that issue alone. I will not address the walker and physical limitation argument offered by Hall, although she should feel free to raise those arguments on remand for the ALJ's consideration.

As discussed above, at step two of the analysis, the ALJ determined that Hall had mild limitations in understanding, remembering or applying information and mild limitations in CCP as a result of her depression. Because those limitations were only "mild" (the lowest form of limitation after "none"), they were determined to be non-severe. [A.R. 23.] In support of determining the limitations were mild, the ALJ reviewed and cited Hall's own Function Report in which she indicated she did not need reminders to take care of her personal needs and grooming, and that she is able to remember taking her medicine by saving alerts on her phone. [A.R. 223.] She further shops for herself and prepares simple meals, with some physical difficulty. [A.R. 25, 223-224.] Nor did she apparently have difficulty concentrating, understanding or following instructions. [A.R. 25, 210.] Nonetheless, the ALJ was clear in his finding that Hall did in fact have limitations in these areas as a result of her documented history of

depression.

And therein lies the issue. The Seventh Circuit has been adamant that when an ALJ determines at step two that a claimant has even moderate or mild limitations, the ALJ *must* then consider those in forming the RFC. "The ALJ must explicitly account for all a claimant's limitations in her hypothetical, including limitations in concentration, persistence, or pace, unless the vocational expert has independently reviewed the medical record." *DeCamp v. Berryhill*, 916 F.3d 671, 675 (7th Cir. 2019) (reversing ALJ's decision for failing to include moderate limitations in CPP and mild limitations in understanding, remembering, and carrying out simple instructions in the RFC). There are no magic words or "specific terminology" the ALJ must include in the RFC, but an ALJ must either incorporate them into the RFC and related hypothetical or satisfactorily explain why they were not be included. *Id.* "[T]he requirement that the ALJ 'consider' such limitations has certainly been interpreted to mean that a real 'evaluation' of the effect of those limitations on the claimant's ability to work must take place." *Underwood v. Colvin*, No. 2:11-CV-354-JD-PRC, 2013 WL 2420874, at *2 (N.D. Ind. May 30, 2013) (citations omitted).

The problem in this case is that the RFC makes no mention of Hall's mild mental limitations. Furthermore, a review of the hearing transcript makes clear that the ALJ did not include any mental limitations in the hypothetical questions posed to the VE. But the ALJ (based on the VE's testimony) determined that Hall could return to her past work as an accountant. According to the Dictionary of Occupational Titles (DOT), an

accountant is a highly skilled job, *i.e.*, one that takes either years of education or years of experience in order to properly perform. The DOT makes clear that being an accountant is a mentally demanding job, which requires an individual to "analyze financial information and prepare financial reports." DOT, 160.162-018. Even setting aside the DOT and the VE's expertise, it is common sense that an accountant needs to have strong mental faculties and be able to concentrate for sustained periods on complicated things like mathematical calculations.

It may well be that Hall's mild CCP limitation would not impact her functional ability to work as an accountant. But if that is the case, the ALJ needed to say so. A reviewing court should not be left to guess. But as of now, none of the nine paragraphs in the written decision devoted to explaining the RFC determination discuss Hall's mental limitations in substance. Without any discussion or reference to it whatsoever in the ALJ's RFC determination, there is a missing link in the analysis. In Social Security parlance, the ALJ failed to build the necessary "logical bridge" between the evidence and his conclusions. *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002) ("We require that an ALJ build an accurate and logical bridge from the evidence to [his] conclusion so that, as a reviewing court, we may assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review.") (citation and quotation marks omitted). That requires a remand. *Cheryl C. v. Berryhill*, No. 18 C 1443, 2019 WL 339514, at *3 (N.D. Ill. Jan. 28, 2019) ("Even if Plaintiff's depression was non-severe, the ALJ still had to assess it "in conjunction with Plaintiff's RFC. And if the ALJ believed that the

mild mental limitations "did not merit a non-exertional limitation in the RFC, he was obligated to explain that conclusion so that the Court can follow the basis of his reasoning. The ALJ did not do so here."); *Hovi v. Colvin*, No. 12-C-169, 2013 WL 3989232, at *16 (W.D. Wis. Aug. 2, 2013) ("Courts in this circuit have consistently held that an ALJ's unexplained failure to include even mild limitations in concentration, persistence, and pace in the RFC warrants remand.") (collecting cases).

The Commissioner points out that Hall does not suggest in her briefing any particular functional limitation that the ALJ should have included in the RFC. In support of the argument, the Commissioner directs me to *Jozefyk v. Berryhill*, 923 F.3d 492 (7th Cir. 2019) in which the Seventh Circuit affirmed a denial of benefits in part on this basis. While I tend to agree that makes Hall's case a little weaker, it is not fatal to her argument. That is because the Seventh Circuit has subsequently made clear that *Jozefyk*'s holding was limited to the particular facts of that case. *Crump v. Saul*, 932 F.3d 567, 571 (7th Cir. 2019) ("In *Jozefyk*, we determined that any error in formulating the RFC was harmless because the claimant had not testified about any restrictions in his capabilities related to concentration, persistence, or pace, and the medical evidence did not otherwise support any such limitations."). But here, there was testimony from Hall about her inability to concentrate, as well as other objective medical evidence relating to her mental conditions. She testified to that specifically. [A.R. 51 "I can't really concentrate. …"; *id.* at 60-61.] And I find the need to include the mental limitations especially important in a case like this where the ALJ's finding of no disability was

premised on Hall returning to her previous job as an accountant. A finding that someone can return to a highly skilled job like an accountant, has inherent incompatibility with a finding that an individual has a limited ability to maintain their concentration—at least absent some additional explanation for that conclusion. It likewise is unclear why the ALJ rejected the state agency consultant's finding that Hall had greater CCP limitation and that her depression was severe.

On remand the ALJ must evaluate and explicitly state whether Hall's mild mental health limitations from her depression warrant any restrictions to her RFC. If so, they should be included in the RFC and posed to the VE. If the ALJ determines that the limitations do not warrant any restriction, the ALJ should explain their reasoning. As it stands now, I am, as the reviewing court, left to guess why the ALJ did not include any restriction in the RFC for the mild limitations he determined Hall had with regard to CCP. As such, the ALJ's written decision cannot be affirmed.

## Conclusion

For the foregoing reasons, the decision of the ALJ denying Plaintiff Melody Hall's application for Supplemental Security Income is REVERSED and REMANDED for further consideration in accordance with this opinion.

SO ORDERED on May 15, 2020.

/s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT